FILED'10 SEP 13 17:27 USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JEFFREY RAY WILLIAMS,         )
                                 )    Civil No. 03-1678-JO

          Petitioner,      )

                                 )

         v.                 )

                                 )

BRIAN BELLEQUE,             )
Superintendent, Oregon        )    OPINION AND ORDER
State Penitentiary,           )

                                 )

          Respondent.      )

      Steven T. Wax
      Federal Public Defender
      Patrick J. Ehlers
      Assistant Federal Public Defender
      Kristina Hellman
      Assistant Federal Public Defender
      101 S.W. Main Street, Suite 1700
      Portland, Oregon 97204

          Attorneys for Petitioner

      John R. Kroger
      Attorney General
      Carolyn Alexander
      Assistant Attorney General

1 - OPINION AND ORDER

Timothy Sylwester
Assistant Attorney General
Jamie K. Contreras
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97301

       Attorneys for Respondent

JONES, District Judge.

Respondent Brian Belleque moves for partial summary judgment on exhaustion/procedural default grounds.[1] In its motion, the State seeks to preclude analysis on the merits of one or more of the claims set forth in the Petition for Writ of Habeas Corpus (#85) on the basis that such claims are unexhausted and/or procedurally defaulted.

In his response to the State's motion, petitioner asserts he fairly presented and exhausted most of the claims that the State contends are defaulted. Moreover, he argues he is excused from exhausting certain other claims because a state-court remedy was not available or a clear and consistent rule pertaining to the claims did not exist. Finally, he reserves his right to further develop the record in order to excuse any default by satisfying one of the exceptions to procedural default.

## BACKGROUND

As noted in a previous Order, the facts regarding the two aggravated murders of which petitioner was convicted are set forth in State v. Williams, 313 Or. 19, 828 P.2d 1006 (Or. 1992), cert. denied, 506 U.S. 858 (1992) (hereinafter "Williams I") and State v. Simonsen, 310 Or. 412, 798 P.2d 241 (Or. 1990) (affirming convictions for aggravated murder and remanding case for a new

---

[1]      Respondent also cross-moves for summary judgment on Claims 1, 2, 3, 7, and 10(A). The court defers ruling on this motion pending its review of the parties' comprehensive briefing addressing the merits of all claims.

2 - OPINION AND ORDER

sentencing proceeding). Briefly, this case involves the murder of two young German women who were on vacation in the United States and hitchhiking from California to Oregon. Petitioner and David Simonsen were seen with the women on August 31, 1988, the day the women were murdered. Later that same day petitioner and Simonsen were seen without the women, but with their possessions. Simonsen confessed to having shot the women. He pled guilty and was sentenced to death. See Simonsen, 310 Or. 412.

Petitioner was initially tried, convicted and sentenced to death in 1989. On direct review, the Oregon Supreme Court upheld petitioner's convictions but remanded the case for a new penalty-phase trial. See Williams I.

Petitioner's second penalty phase trial was held in August 1993 and he was again sentenced to death. On direct review, the Oregon Supreme Court upheld the death sentence. See State v. Williams, 322 Or. 620, 912 P.2d 364 (Or. 1996), cert. denied, 519 U.S. 854 (1996) (hereinafter "Williams II").

Petitioner next filed for post-conviction relief ("PCR") in state court. The PCR court held an evidentiary trial and denied relief. Respondent's Exhibits 168 & 169. On appeal, the Oregon Court of Appeals affirmed without opinion and the Oregon Supreme Court denied review. Williams v. Palmateer, 184 Or. App. 761, 58 P.3d 244 (2002), rev. denied, 335 Or. 656, 75 P.3d 899 (2003).

On March 16, 2007, petitioner filed his Petition for Writ of Habeas Corpus (#85) raising Nineteen Claims and numerous sub-claims. At the court's request, the parties briefed via petitioner's motion for partial summary judgment several of petitioner's strongest claims in an effort to determine whether one or more of those claims could be summarily resolved in petitioner's favor on the current record and without further extensive proceedings involving all of petitioner's claims. The court

3 - OPINION AND ORDER

denied petitioner's motion.  Subsequently, the state filed the subject motion for partial summary judgment on exhaustion/procedural default grounds and cross-moved for summary judgment on the previously briefed claims.  In addition, the court has directed the parties to submit comprehensive briefing on the merits of all claims.

## STANDARDS

### I.    Summary Judgment

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56 (c).  If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact.  United Steelworkers of Am. v. Phelps Dodge, 865 F.2d 1539, 1542 (9th Cir. 1989).

The substantive law governing a claim determines whether a fact is material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also T.W. Elec. Serv. v. Pacific Elec. Contractors, 809 F.2d 626, 630 (9th Cir. 1987).  Reasonable doubts as to the existence of a material factual issue are resolved against the moving party.  T.E. Elec. Serv., 809 F.2d at 631.  Inferences drawn from facts are viewed in the light most favorable to the non-moving party.  Id. at 630-31.  Summary judgment is an appropriate vehicle for deciding habeas corpus cases.  See Blackledge v. Allison, 431 U.S. 63, 80-81 (1997).

### II.    Exhaustion and Procedural Default

A habeas petitioner must exhaust his claims by fairly presenting them to the state's highest

court through a direct appeal or collateral proceedings before a federal court will consider the merits of those claims. Smith v. Baldwin, 510 F.3d 1127, 1137-38 (9th Cir. 2007) (citing Rose v. Lundy, 455 U.S. 509, 515 (1982)). "As a general rule, a petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the appropriate state courts . . . in the manner required by the state courts, thereby 'affording the state courts a meaningful opportunity to consider allegations of legal error.'" Casey v. Moore, 386 F.3d 896, 915-916 (9th Cir. 2004) (quoting Vasquez v. Hillery, 474 U.S. 254, 257, (1986)). If a habeas litigant failed to present his claims to the state courts in a procedural context in which the merits of the claims were considered, the claims have not been fairly presented to the state courts and are therefore not eligible for federal habeas corpus review. Id. at 916-18 (citing Castille v. Peoples, 489 U.S. 346, 351 (1989)).

A petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule, or failed to raise the claim at the state level at all. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Coleman v. Thompson, 501 U.S. 722, 750 (1991). Similarly, if a federal constitutional claim is expressly rejected by a state court on the basis of a state procedural rule that is independent of the federal question and adequate to support the judgment, the claim is procedurally defaulted. Coleman, 501 U.S. at 729-30. See also Bennett v. Mueller, 322 F.3d 573, 580 (9th Cir. 2003), cert. denied, 540 U.S. 938 (2003).

If a petitioner has procedurally defaulted a claim in state court, a federal court will not review the claim unless the petitioner shows "cause and prejudice" for the failure to present the constitutional issue to the state court, or demonstrates that the failure to consider the claims will result in a fundamental miscarriage of justice. Edwards, 529 U.S. at 451; Coleman, 501 U.S. at 750.

## DISCUSSION

The State either concedes the following claims are properly exhausted or waives its objection to these claims as unexhausted or procedurally defaulted:   1(A)(1); 1(A)(2)(f)-(g); 2(8)(c); 3(B)(3)(k); 4(A) (to the extent this claim is a facial challenge to Oregon's capital sentencing scheme); 6(A)(2); 7(A)(2); 7(A)(4); 7(B); 9; 10(B) (to the extent this claim is a facial challenge to Oregon's capital sentencing scheme); 11(A) (to the extent this claim is a facial challenge to Oregon's capital sentencing scheme); 12(7); and 15 (to the extent this claim is a facial challenge to Oregon's capital sentencing scheme).

To the extent the State's motion for partial summary judgment on exhaustion/procedural default grounds applies to these claims, the court denies the State's motion.  The court will address the merits of these claims in due course.

For his part, petitioner either concedes or does not dispute the State's contention that he failed to exhaust the following claims and that they are now procedurally defaulted: 3(E)(1); 3(E)(6); 5(A); 5(B);  6(A)(1); 6(B); 6(C); 6(D); 8; 12(4); 12(6); 12(8); 12(9); 12(10); 12(11); 13(3); 13(5); 13(6); 13(7); 13(8); 14(A); 14(B); 14(C); 14(D); and 14(E) (though petitioner contends "much of what is raised in these claims can and should be incorporated into this Court's review of Petitioner's challenges to the Constitutionality of the Oregon death penalty scheme.").  The court has reviewed the record as to these claims and finds the State's contention that they were not fairly presented to the Oregon courts and are now procedurally defaulted is well taken.  The court will address exceptions to procedural default in a future round of briefing.

Accordingly, the court will examine whether the following remaining claims were fairly presented to the Oregon courts and, thus, properly exhausted:  1(A)(2)(a)-(e); 1(A)(3); 1(A)(4);

1(A)(5)(a)-(d); 1(B)(1); 1(B)(2)(a)-(e); 1(C)(1); 1(C)(2)(a)-(d); 1(C)(3)(a)-(d); 1(C)(4); 1(D)(1)(a)-(d); 1(D)(2); 1(D)(3); 1(E)(1)(a)-(j); 1(E)(2)(a)-(b); 1(E)(3)(a); 1(E)(b); 1(E)(4);[2] 1(F)(a); 1(F)(b); 1(F)(c); 2(1); 2(2)(a); 2(2)(b); 2(2)(c); 2(2)(d); 2(3); 2(4); 2(5); 2(6); 2(7); 2(8)(a); 2(8)(b); 2(8)(d); 2(8)(e); 2(8)(f); 2(8)(g); 3(A); 3(B)(1); 3(B)(2); 3(B)(3)(a)-(j), (l)-(m); 3(C); 3(D); 3(E)(2); 3(E)(3); 3(E)(4); 3(E)(5); 4(B); 4(C)(1); 4(C)(2); 7(A)(1); 7(A)(3); 7(A)(5); 7(A)(6); 10(A); 10(C); 10(D); 10(E); 11(B)(1); 11(B)(2); 11(B)(3); 11(B)(4); 11(C); 11(D); 11(E); 12(1); 12(2); 12(3); 12(5); 12(12); 13(1); 13(2); 13(4); 13(9); 13(10); 16(1); 16(2); 16(3); 16(4); 16(5); 16(6); 16(7); 16(8); 16(9); 17; 18; and 19.

## FAIR PRESENTATION AND EXCEPTIONS TO EXHAUSTION

### I.    Ineffective Assistance of Guilt Phase Counsel Brasch and Trew (Claim 1)

Petitioner's contention that he fairly presented all of the guilt phase ineffective assistance of counsel claims set forth in Claim 1 of his federal habeas petition ("Petition") to the Oregon courts rests on the following arguments:  (1) That by incorporating his third amended post-conviction petition ("PCR petition") by reference on appeal and in his petition for review, he fairly presented all the claims contained in the PCR petition to the Oregon courts; (2) that to the extent details identified in the Petition claims were not specifically mentioned in the PCR petition, he is merely giving examples of general, fairly presented claims; and (3) that when the State concedes similar or general claims were fairly presented to the state courts, but nevertheless asserts petitioner failed to present specific claims, it is engaging in prohibited "hairsplitting" in a situation where there is merely a different articulation of the same claim by different attorneys.

---

[2]    Due to inadvertence on the State's part, Petition claims 1(E)(4) and 1(E)(5) have been renumbered as claims 1(E)(3)(b) and 1(E)(4) respectively.

### A.    **Incorporation by Reference**

Under Oregon Rules of Appellate Procedure, a question or issue to be decided on appeal shall: (1) Be raised in the form of an assignment of error; (2) identify precisely the legal, procedural, factual, or other ruling that is being challenged; and (3) demonstrate that the question or issue presented by the assignment of error timely and properly was raised and preserved in the lower court. Or. R.App. P. 5.45(1), (3) & (4)(a).

Giving petitioner in this capital case every benefit, the court finds he presented the following claims of ineffective assistance of guilt phase trial counsel (Brasch and Trew) to the Oregon Court of Appeals following the PCR trial court's denial of relief on his PCR petition:

1.     Brasch had a personal and economic conflict of interest in representing petitioner;

2.     Counsel did not present any coherent defense strategy;

3.     Brasch requested a trial within 60 days without taking the time to prepare a defense;

4.     Brasch considered picking a death penalty jury to be the same as picking a jury in a burglary case;

5.     Counsel failed to move for change of venue despite petitioner's request;

6.     The investigator counsel hired, Gordon West, had no death penalty experience, used only 89.6 of the 100 hours he was authorized, and spent half of that time transporting evidence;

7.     No team meetings were had with counsel and West;

8.     Brasch did not use investigators because it was not his style;

9.     West had no idea what the defense strategy was in petitioner's case;

10.     Counsel never interviewed petitioner's immediate family members prior to trial;

11.   Counsel had no training in handling death penalty cases other than that Brasch may have attended one seminar years before the death penalty was reinstated in Oregon in late 1984;

12.   Brasch's opening statement made numerous claims not supported by the evidence and the prosecutor was able to capitalize on this fact in closing, thus, prejudicing petitioner; and

13.   Counsel failed to effectively cross examine the prosecution witnesses.[3]

Respondent's Exhibits Volume 11, Exhibit 174, pp. 56-59.

While petitioner did not specifically identify all of these claims as assignments of error, they arguably were properly before the Oregon Court of Appeals and, by reference to the appellate briefs in the Petition for Review, the Oregon Supreme Court.

However, the guilt phase ineffective assistance of counsel claims which petitioner raised in his PCR petition and sought to incorporate by reference on appeal, were not fairly presented to the Oregon appellate courts.  The Supreme Court has clearly held that this approach is insufficient to fairly present a claim on appeal.  See Baldwin v. Reese, 541 U.S. 27, 32 (2004) ("ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or brief (or similar document) that does not alert it to the presence of a federal claim in order to find material . . . that does so."); see also Castillo v. McFadden, 399 F.3d 993, 1000 (9th Cir. 2005) (in order to exhaust, a petitioner must present his federal constitutional issue "within the four corners

---

[3]   Petitioner additionally asserted that Brasch and Trew's investigation during the guilt phase was so inadequate as to be literally non-existent and that their representation was so deficient that petitioner was functionally without counsel during the guilt phase. These conclusory allegations do not satisfy the above rule of Oregon appellate procedure requiring petitioner to "identify precisely the legal, procedural, factual, or other ruling that is being challenged."  Accordingly, these conclusory "claims" were not presented to the Oregon appellate courts in a procedural context in which their merits were independently considered.

9 - OPINION AND ORDER

of his appellate briefing"). Petitioner's citation to the Oregon Supreme Court's recent decision in
Farmer v. Baldwin, 346 Or. 67, 205 P.3d 871 (2009) is unavailing. Farmer was specifically limited
to the situation where appellate counsel filed a Balfour brief and, as the prisoner's "Section B"
portion of the brief, the prisoner attached a copy of the PCR petition. Farmer, 346 Or. at 70.

### B.    "Examples" Not Subclaims and Different Articulations of the Same Claims

Petitioner's arguments notwithstanding, presentation of some ineffective assistance of guilt
phase trial counsel claims to the Oregon courts does not preserve all ineffective assistance of guilt
phase trial counsel claims regardless of how he labels them. See Carriger v. Lewis, 971 F.2d 329,
333-34 (9th Cir. 1992) (en banc) (ineffective assistance claims are discrete, and each must be
properly exhausted or it will be defaulted), cert. denied, 507 U.S. 992 (1993). Accordingly,
petitioner's assertions that certain allegations are "examples," as opposed to subclaims, or that the
allegations are merely different articulations of other fairly presented claims are without merit. For
example, the allegations set forth in Claim 1(A)(5)(a) (that guilt phase counsel were ineffective for
failing to hire, supervise and direct a qualified investigator when such investigator took crime-scene
photographs that did not accurately portray the murder scene and for failing to prepare such
investigator for cross-examination concerning those photographs) are not preserved by presentation
of a more generic claim that counsel failed to hire an experienced and qualified investigator. The
former are discreet claims which relate specifically to counsel's actions vis-a-vis their investigator's
(West's) photographs of the crime scene and his testimony about such photos at trial. Because
petitioner never presented these discrete claims to the Oregon courts, he is not entitled to relief on

these claims here either on their own or in conjunction with other allegations of deficient representation related to the hiring, supervision and direction of West.

Based on the foregoing and giving petitioner in this capital case every benefit, I conclude he adequately presented the following claims to the Oregon courts: 1(A)(2)(e) (to the extent he alleged guilt phase counsel lacked experience litigating death penalty cases and were not qualified to represent petitioner in this case); 1(A)(3); 1(A)(4); 1(A)(5)(b), (d); 1(B)(2) (to the extent he alleged generally that counsel made numerous claims in his opening statement that were not supported by the evidence); 1(C)(1) (to the extent petitioner alleged generally that Brasch made numerous statements not supported by the evidence in his opening statement); 1(E)(1) (to the extent he alleged generally that counsel failed to effectively cross-examine prosecution witnesses).  The court will address the merits of these claims in due course.

Accordingly, as the following guilt phase ineffective assistance of counsel claims were never presented to the Oregon courts, they are now defaulted:  1(A)(2)(a)-(d); 1(A)(2)(e) (to the extent petitioner alleges guilt phase counsel failed to realize the importance of preserving the entire record of the case and failed to file pretrial motions to ensure all bench conferences were recorded, failed to object when they were not recorded, and failed to make a record of the topics and results of unrecorded bench conferences); 1(A)(5)(a), (c); 1(B)(1); 1(B)(2)(a)-(e) (to the extent these "examples" were never presented to the Oregon appellate courts); 1(C)(1) (to the extent petitioner alleges something other than a general allegation that Brasch made numerous statements not supported by evidence in his opening statement); 1(C)(2)(a)-(d); 1(C)(3)(a)-(d); 1(C)(4); 1(D)(1)(a)-(d); 1(D)(2); 1(D)(3); 1(E)(1)(a)-(j); 1(E)(2); 1(E)(3)(a); 1(E)(3)(b); 1(E)(4); 1(F)(a); 1(F)(b); and 1(F)(c).  Exceptions to procedural default will be addressed in a later round of briefing.

11 - OPINION AND ORDER

## II.    Ineffective Assistance of Counsel (Brasch and Trew) in First Sentencing Phase (Claim 2)

Petitioner arguably presented the following claims of ineffective assistance of trial counsel (Brasch and Trew) related to the first penalty phase to the Oregon state courts:

1.    Brasch and Trew failed to present available and compelling mitigation evidence on behalf of petitioner;

2.    Brasch put petitioner on the stand during the penalty phase of his first trial without properly preparing him and without a coherent plan for his testimony which prejudiced both the 1989 and 1993 penalty phases;

3.    Brasch and Trew failed to discover, obtain a diagnosis, develop and present evidence of petitioner's bipolar disorder; and

4.    Trew rendered ineffective assistance because he was too emotional about the possibility of the imposition of the death penalty in petitioner's case.

Accordingly, giving petitioner in this capital case every benefit, the court concludes he adequately presented the following claims to the Oregon courts:  2(2)(c); 2(7) (to the extent he alleged counsel failed to present available and compelling mitigation evidence and failed to discover petitioner suffered from mental illness); 2(8)(c); and 2(8)(f).  The court will address the merits of these claims in due course.

The following remaining ineffective assistance of counsel claims related to the first penalty phase were never presented to the Oregon courts and are now defaulted:  2(1); 2(2)(a); 2(2)(b); 2(2)(d); 2(3); 2(4); 2(5); 2(6); 2(8)(a); 2(8)(b); 2(8)(d); 2(8)(e); and 2(8)(g).  Exceptions to procedural default will be addressed in a later round of briefing.

### III.   Ineffective Assistance of Counsel (Hendershot and Kolego) in Resentencing Phase (Claim 3)

Petitioner arguably presented the following claims of ineffective assistance of resentencing trial counsel (Hendershot and Kolego) to the Oregon state courts:

1.   Brasch's handling of petitioner's testimony during 1989 trial effectively prevented Hendershot and Kolego from calling petitioner in the 1993 trial;

2.   Hendershot and Kolego failed to present facts related to petitioner's upbringing and life in mitigation;

3.   Hendershot and Kolego failed to investigate and present evidence of petitioner's bipolar disorder; and

4.   Hendershot and Kolego failed to adequately cross-examine Dr. Cochran.

Accordingly, giving petitioner in this capital case every benefit, I conclude he adequately presented the following claims to the Oregon courts: 3(B)(3)(c)-(d) (to the extent he alleged that Hendershot and Kolego failed to present facts related to petitioner's upbringing and life in mitigation); 3(B)(3)(f) (to the extent he alleged that Hendershot and Kolego failed to investigate and present evidence of petitioner's bipolar disorder); 3(C) (to the extent he alleged Hendershot and Kolego failed to present facts related to petitioner's upbringing and life in mitigation); and 3(E)(2) (to the extent he alleged Hendershot and Kolego failed to adequately cross-examine Dr. Cochran). The court will address the merits of these claims in due course.

The following remaining ineffective assistance of counsel claims from petitioner's resentencing trial were never presented to the Oregon courts and are now defaulted: 3(A); 3(B)(1); 3(B)(2); 3(B)(3)(a)-(b), (e), (g)-(j), (l)-(m); 3(D); 3(E)(3); 3(E)(4); and 3(E)(5). Exceptions to procedural default will be addressed in a later round of briefing.

13 - OPINION AND ORDER

IV.    **State Violated Petitioner's Constitutional Rights When it Held a Penalty-Only Retrial in 1993 (Claim 4)**

Petitioner maintains the claims set forth in Claim 4 of his Petition were fairly presented to the Oregon courts in his first direct appeal. Specifically, he contends he fairly presented these claims in Assignment of Error Nos. 16 and 17 of his appellant's brief. Respondent's Exhibits Volume 1, Exhibit 105, pp. 241-50. Assignment of Error No. 16 addressed the question of whether the trial court in the first penalty phase should have instructed the jury on a "Fourth Question" concerning mitigating evidence. Significantly, the relief petitioner sought and was eventually granted was a new penalty trial. He never argued he was entitled to a new guilt phase trial based on the trial court's failure to instruct the jury on a "Fourth Question." Assignment of Error No. 17 addressed the question of whether the trial court in the first penalty phase erred in failing to declare the Oregon death penalty statute unconstitutional. These assignments of error are fundamentally different ones from those petitioner seeks to raise in Claims 4(B)-(C) of his federal habeas petition wherein he alleges: (1) That application of the 1993 version of Oregon's death penalty statute violated the ex post facto clause of the United States Constitution; (2) that application of the 1993 version of the statute violated his Fourteenth Amendment rights under due process clause of the United States Constitution because he was not on notice and was thus unable to prepare for a penalty-only retrial; and (3) that his decisions during the guilt phase were based on law in effect in 1988 when there was no provision for a penalty-only retrial. Indeed, it is difficult to imagine how petitioner could have fairly presented claims related to the constitutionality of his second penalty-phase trial held 1993 in his first direct appeal prior to the Oregon Supreme Court ever granting him a new penalty-phase proceeding.

Petitioner additionally argues that "challenges of these kind were also raised on post-conviction" and reiterates his argument that by incorporating his PCR petition by reference, all claims raised therein were adequately presented to the Oregon courts.  The court disagrees.  First, petitioner did not include the issues set forth in Claim 4(B)-(C) in his PCR petition.  Moreover, the PCR claims petitioner references as having preserved the federal habeas claims at issue were ones of ineffective assistance of appellate counsel and are not sufficient to preserve a claim that the State violated petitioner's constitutional rights when it held a penalty-phase only retrial.  In addition, the ineffective assistance of appellate counsel claims mirror the direct appeal claims discussed above and are fundamentally different claims for the same reasons.  Finally, even assuming the claims were in the PCR petition, for the reasons discussed above, incorporation of this petition by reference is insufficient to preserve claims not otherwise presented to the Oregon appellate courts.

Accordingly, the following claims related to the constitutionality of petitioner's resentencing trial were never presented to the Oregon courts and are now defaulted:  4(B); 4(C)(1); and 4(C)(2).  Exceptions to procedural default will be addressed in a later round of briefing.

## V.    Reasonable Doubt/Presumption of Innocence Instructions (Claim 7)

Petitioner contends any perceived differences between the claims raised at 7(A)(1), (3), (5)-(6) and the reasonable doubt claim he raised in his first direct appeal are nothing more than different articulations of the same claim by different attorneys.  The court disagrees.  Claim 7(A)(1) alleges the trial court erroneously instructed the jury at the outset of the case that petitioner was presumed "not guilty" rather than "presumed innocent."  Claims 7(A)(3), (5)-(6) all allege the trial court erred in defining reasonable doubt as proof "such as you would be willing to act upon in the most important of your affairs."  The court has carefully examined the record to determine whether the

15 - OPINION AND ORDER

issues set forth in these grounds for relief were presented to the Oregon appellate courts. On direct appeal, petitioner challenged the trial court's use of the phrases "moral certainty" and "moral evidence" in defining reasonable doubt. Respondent's Exhibits Volume 1, Exhibit 105, pp. 188-203. Petitioner did not take exception at trial or on appeal with the trial court telling the jury petitioner was presumed "not guilty" or that reasonable doubt involved proof "such as you would be willing to act upon in the most important of your affairs." These are discrete claims and presentation of the former does not preserve the latter.

Accordingly, the following claims are now defaulted: 7(A)(1); 7(A)(3); 7(A)(5); and 7(A)(6). Exceptions to procedural default will be addressed in a later round of briefing.

### VI.    Petitioner was Deprived of the Right to a Fair, Impartial, and Representative Jury at Resentencing (Claim 10)

In a prior Order (#120), the court thoroughly analyzed whether the claim set forth at 10(A) was procedurally defaulted and determined that it was.[4] As for the claims set forth at 10(C)-(E), petitioner insists he fairly presented these issues to the Oregon courts when he challenged the constitutionality of his resentencing procedure and the selection of the jury that ultimately sentenced him to death. The court disagrees. Claims 10(C)-(D) relate specifically to the "death qualification" process. Claim 10(C) relates to whether the trial court's decision to question jurors about their religious beliefs and excuse those who opposed the death penalty based on their beliefs violated equal protection. Claim 10(D) relates to whether the "death qualification" process resulted in removal of jurors based on their sincerely held religious beliefs in violation of the First Amendment

---

[4]    The court also determined based on the record before it that the claim should be denied on the merits.

16 - OPINION AND ORDER

of the United States Constitution.  Petitioner did not present these issues to the Oregon Supreme Court on direct review from his resentencing trial.  He did raise an ineffective assistance of appellate counsel claim in post-conviction, alleging counsel failed to raise an assignment of error on appeal challenging the death qualification process.  However, petitioner did not raise this as an assignment of error in the Oregon Court of Appeals and as noted above, incorporating the PCR petition by reference is insufficient to preserve claims not otherwise presented and argued on appeal.  Moreover, a claim of ineffective assistance of appellate counsel is distinct from a claim challenging the constitutionality of the death qualification process itself.  Presentation of the former does not preserve the latter.

As for Claim 10(E) (claim that the jurors on petitioner's resentencing jury: (1) Were biased against him and failed to disclose such bias during voir dire; (2) were engaged in misconduct that may have included premature deliberation, consideration of inadmissible evidence, and consideration of religious issues; and (3) were improperly subjected to outside influences and extraneous factors), petitioner contends these claims were raised in his first direct appeal and in his PCR Petition.  The court disagrees.  Petitioner's argument that presentation of claims of juror bias in his first direct appeal is sufficient to exhaust claims of juror bias in his second direct appeal is without merit.  The Oregon Supreme Court vacated petitioner's first death sentence and remanded his case for a full resentencing trial.  That second penalty-phase trial necessarily superseded the first.  Having been given the benefit of a totally new trial and subsequent direct appeal, petitioner, through appointed counsel, was obligated to raise on appeal errors identified in his resentencing trial.  Because the as-applied claims at issue here involve bias, misconduct and improper influence bearing on his

resentencing jury, presentation of similar claims related to his first jury is not fair presentation of the subject claims that stem from an entirely different proceeding.

Petitioner additionally suggests these claims may have been contained in his PCR petition and reiterates his argument that by incorporating his PCR petition by reference all claims raised therein were adequately presented to the Oregon courts. The court disagrees. Petitioner did not raise the subject claims in his PCR petition, and even if he had, for the reasons discussed above, incorporation by reference to the PCR petition is insufficient to present these claims to the Oregon courts.

Accordingly, the following claims related to petitioner's resentencing jury were never presented to the Oregon courts and are now defaulted: 10(A); 10(C); 10(D); and 10(E). Exceptions to procedural default will be addressed in a later round of briefing.

## VII.   Constitutional Violations Arising Out of the "Future Dangerousness" Sentencing Element (Claim 11)

Petitioner contends claim 11(B) (alleging the State's case for future dangerousness was based on Dr. Cochran's unreliable opinion) was fairly presented to the state courts through a similar ineffective assistance of counsel claim raised in the PCR petition and incorporated by reference on appeal. The court disagrees. Petitioner cites none, and the court finds no support for the proposition that a claim of trial court error and a claim of ineffective assistance of counsel for failing to object to such error are merely different articulations of the same claim. Moreover, the court has reviewed the ineffective assistance of counsel and trial court error claims petitioner contends are merely different articulations of the trial court error claim he presents here and finds it is not. The referenced PCR petition ineffective assistance claim involved allegations that counsel failed to

adequately prepare for and to cross examine Dr. Cochran when they failed to elicit testimony from Dr. Cochran that : (1) he always testifies that death is an appropriate punishment; (2) he always finds that the defendant poses a future danger; (3) he had complaints against him before the Oregon Board of Psychology; and (4) he was involved in a pending disciplinary proceeding.  The referenced PCR petition trial court error claim involved an allegation that the trial court erred when it prematurely ruled Dr. Cochran's testimony would be admissible in rebuttal prior to petitioner's counsel putting in any evidence Dr. Cochran could rebut.  Respondent's Exhibits Volume 4, Exhibit 130, pp. 30 & 41; Volume 11, Exhibit 174, pp. 47-62.  These discrete claims differ from those presented in claim 11(B) wherein petitioner alleges Dr. Cochran:  (1) testified beyond his area of expertise; (2) did not adequately qualify his opinions due to lack of information; (3) failed to admit to the jury that he had been warned to qualify his opinions on the issue of future dangerousness in similar cases; and (4) failed to admit he was facing suspension of his license for failure to adequately qualify his opinion in similar situations.  Regardless, as discussed above, incorporation by reference to the PCR petition is insufficient to exhaust a claim.

With regard to Claims 11(C)-(E), petitioner accepts the State's assertion that these claims were not raised in any of petitioner's state court proceedings, but nevertheless argues that this fact does not preclude review of the merits of these claims in federal habeas because given the State's waiver of exhaustion and procedural default as to claim 11(A) (facial challenge), the court will likely have to consider issues raised in claims 11(C)-(E) (applied challenges).  As such, petitioner argues the State's parsing out of each part of claim 11 is counter productive to fair review of claim 11.  The court disagrees. Drawing a distinction between facial challenges to the Oregon death penalty scheme and petitioner's as-applied challenges to his resentencing trial is not "unwarranted hairsplitting" on

the State's part. Moreover, petitioner's contention that he is actually innocent of being a future danger and that the court should excuse any procedural default on that basis will be addressed in a future round of briefing when the court considers exceptions to procedural default.

Accordingly, the following claims involving allegations of trial court error related to future dangerousness were never presented to the Oregon courts and are now defaulted: 11(B)(1); 11(B)(2); 11(B)(3); 11(B)(4); 11(C); 11(D); and 11(E). Exceptions to procedural default will be addressed in a later round of briefing.

### VIII. Constitutional Claims Arising From the Court's Rulings During the Guilt-Phase Trial Which Rendered the Trial Proceedings Fundamentally Unfair (Claim 12)

With regard to Claims 12(1)-(3), (5), petitioner accepts the State's assertion that these claims of trial court error in the guilt phase were not raised on direct appeal, but nevertheless argues this fact does not preclude review of the merits of these claims in federal habeas because he raised them in post-conviction as both trial court error and as ineffective assistance of guilt phase counsel claims. Accordingly, petitioner argues the "fundamental nature" of these claims were fairly presented to the state courts. The court disagrees. In Oregon, claims of trial court error and due process violations must be raised on direct appeal and no claim may be made in post-conviction unless the ground "was not asserted and could not reasonably have been asserted in the direct appellate review." Palmer v. State, 318 Or. 352, 356 (Or. 1994); ORS 138.550(2). Here, the PCR court granted the state's motion for summary judgment as to the trial court error claims and this ruling was affirmed on appeal. Accordingly, the trial court error claims were not presented to the Oregon courts in a procedural context in which the merits of the claims were considered. In addition, presentation of an ineffective

assistance claim is insufficient to present a claim of trial court error based on same subject. Finally, as noted above, incorporation by reference to a PCR petition is insufficient to preserve a claim.

With regard to Claim 12(12) (assigning error to the trial court's refusal to grant appellate counsel's motion for transcript of voir dire), petitioner contends this claim was properly presented in his PCR petition and on appeal. The court disagrees. As the State correctly notes, petitioner only raised a claim that appellate counsel erred in failing to assign as error the trial court's denial of his motion for a transcript of voir dire. Presentation of an ineffective assistance of appellate counsel claim is insufficient to present a claim of trial court error based on same subject.

Accordingly, the following claims related to trial court errors during the guilt phase were never presented to the Oregon courts in a procedural context in which the merits of the claims were considered and are now defaulted: 12(1); 12(2); 12(3); 12(5); and 12(12). Exceptions to procedural default will be addressed in a later round of briefing.

## IX. Constitutional Claims Arising From the Trial Court's Rulings at Resentencing (Claim 13)

With regard to Claim 13(1) (alleging the trial court erred by preventing petitioner's resentencing counsel from conducting any investigation related to the guilt phase of the trial because it resulted in petitioner being saddled with guilt phase counsel's (Brasch and Trew) ineffective assistance, e.g., when the prosecutor was permitted to introduce numerous transcripts of trial testimony which were tainted by the ineffective and incompetent cross-examination of Brasch and Trew), petitioner concedes he did not raise the claim in his second direct appeal, but contends he raised it in his PCR petition. The court disagrees. I have reviewed the PCR petition at pp. 35-37 and find no reference to the resentencing trial court refusing to allow any investigation related to the guilt

phase and resultant prejudice based on the prosecution's introduction of transcripts tainted with Brasch and Trew's faulty cross-examination.

With regard to claim 13(2) (alleging the trial court denied funds for investigation and litigation expenses preventing petitioner from putting on a defense to the imposition of the death penalty), petitioner contends it is not clear the claim could have been raised on direct appeal, and therefore asserts it was properly raised in post-conviction and in his post-conviction appeal. The court disagrees. Pursuant to <u>Palmer</u>, the PCR court granted the State's motion for summary judgment as to the trial court error claims and their merit was never addressed by the state appellate courts.

With regard to Claim 13(4) (alleging the trial court allowed the introduction of numerous allegations of prior uncharged and unproved conduct by petitioner), the parties dispute whether this claim was presented to the Oregon courts solely on state-law grounds. The only conduct at issue in the claim raised in state court was petitioner's fight with his cellmate at the time (Randy Guzek). Giving petitioner every benefit, I agree he raised this as a claim of trial court error in admitting evidence of the fight because it violated the Fifth Amendment's double jeopardy clause. However, to the extent petitioner presents a claim encompassing other uncharged and unproved conduct, such allegations were not fairly presented to the Oregon courts and are now defaulted.

With regard to Claim 13(9) (alleging the trial court erred in determining counsel could not introduce evidence of the parole board's role in determining the sentence for a life sentence or consecutive sentences), petitioner raised a claim on his second direct appeal contending the trial court erred when it denied petitioner's request to inform the jury that if they imposed two life sentences the trial court could exercise its discretion to impose consecutive minimum sentences. These are different claims involving different actors: the parole board and trial court. Moreover,

22 - OPINION AND ORDER

the Oregon Supreme Court refused to address petitioner's arguments on appeal that the trial court's failure to allow argument about its discretion to impose consecutive sentences violated his rights under the Sixth, Eighth, and Fourteenth Amendments of the United States Constitution because petitioner had not raised any federal constitutional claims below. See Respondent's Exhibits Volume 4, Exhibit 119.

With regard to Claim 13(10) (alleging the trial court erred when it failed to admonish the prosecution and grant a mistrial due to the prosecutor's inflammatory, improper and prejudicial statements in closing arguing to the jury that the evidence did not justify a sentence less than death), petitioner concedes that the Oregon Supreme Court held this claim to be procedurally barred because counsel's motion for a mistrial was untimely. Nevertheless, petitioner argues that this court is not prevented from reviewing this claim because (1) the rule of state law upon which the trial court's ruling rests was not well established at the time of his criminal trial, (2) application of the rule to petitioner's case is "surprisingly harsh" because the Oregon Supreme Court did not apply the rule in another death penalty case, and (3) this court erred in considering cases decided after 1993 in determining whether the rule was sufficiently well establish at the time of his criminal trial. This court addressed the first two assignments of error in its Opinion and Order (#120). For the reasons stated therein, I conclude that the Oregon law governing the timeliness of motions for mistrial is an independent and adequate state law ground sufficient to bar federal habeas review. Consideration of cases decided after 1993 does not change this conclusion because there was sufficient case law prior to 1994 to determine that the state law was firmly established at time of petitioner's trial. See, e.g., CR 136 at 77-84; CR 120 at 9.

Accordingly, the following claims related to trial court errors during the resentencing phase were never presented to the Oregon courts and are now defaulted: 13(1); 13(2); 13(4) (to the extent petitioner is referring to conduct other than the allegation that admission of petitioner's fight with his cellmate violated the double jeopardy clause of the Fifth Amendment); 13(9); and 13(10). Exceptions to procedural default will be addressed in a later round of briefing.

**X.     Lack of Sufficiently Complete Record to Allow Review (Claim 16)**

Petitioner contends the State has failed to provide a constitutionally complete record to allow review of his conviction and death sentence. The court construes the allegations set forth at Claims 16(1)- (6) as facial challenges to the constitutionality of Oregon's procedure for obtaining the record in a capital case and by extension, facial challenges to Oregon's capital sentencing scheme. The State's motion is denied as to these claims. Their merits will be addressed in due course.

As for claims 16(7)-(9), the State contends these claims were never raised in Oregon's courts. While petitioner denies this assertion, he fails to direct the court to any place in the record, and the court finds none, confirming the claims were raised in the Oregon courts. Instead he argues that, "[t]o this day the state has not provided a sufficiently adequate record of the trial proceedings in order to allow for a review of his conviction and death sentence" and that "[t]hese failures render it impossible to confirm that the conviction and death sentence imposed on Petitioner was Constitutional." Petitioner makes no attempt to articulate why he could not have presented these claims to the state courts.

Accordingly, the following claims related to petitioner's assertion that there is lack of a sufficiently complete record to allow review of his conviction and sentence were never presented to

the Oregon courts and are now defaulted: 16(7); 16(8); and 16(9). Exceptions to procedural default will be addressed in a later round of briefing.

## XII.   Cumulative Impact of Errors (Claim 17)

Petitioner contends his conviction and sentence are void because the multiplicity of errors in the guilt and sentencing phases of his trial deprived him of virtually all of his constitutional rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and that these errors entitle him to relief. The State acknowledges petitioner raised claims of cumulative error in his PCR petition related to errors made by counsel in both the guilt and resentencing phases, but contends he never raised his claims of cumulative error on appeal. Petitioner asserts all the claims raised in his federal habeas petition were set forth in his PCR petition and incorporated by reference on appeal. For the reasons discussed above, incorporation by reference is insufficient to fairly present a claim to the Oregon appellate courts. Accordingly, Claim 17 was never presented to the Oregon courts and is now defaulted. Exceptions to procedural default will be addressed in a later round of briefing.

## XIII.   Cruel and Unusual Punishment (Claim 18)

Petitioner concedes he never challenged as violative of the Eighth and Fourteenth Amendments of the United States Constitution Oregon's death by lethal injection procedures related to (1) drugs and methods used to execute inmates, (2) the delegation of medical procedures to nonmedical personnel, (3) the secrecy of the execution process, (4) the length of time he must spend on death row, and (5) the execution itself as a violation of evolving standards of decency. Moreover, he indicates he raised the issue in his federal habeas petition to preserve it, but that the court need not address it at this time. He does assert that the court could reach it as a facial challenge to

Oregon's death penalty scheme and further seeks leave to argue in the future that lack of exhaustion should be excused due to deficiencies in Oregon's post-conviction system. Accordingly, these claims are unexhausted.[5]

## IX.    Incompetency (Claim 19)

Petitioner alleges in this claim that he is not competent to be executed. He acknowledges, however, that this allegation is not ripe and is premature for federal review. Pursuant to Martinez-Villareal v. Stewart, a claim of incompetency for execution "must be raised in a first habeas petition, whereupon it also must be dismissed as premature due to the automatic stay that issues when a petition is first filed." 118 F.3d 628, 634 (9th Cir. 1997), aff'd, 523 U.S. 637 (1998). If presented to the district court after the claim is ripe for review, it shall not be treated as a second or successive petition. See id. at 643-44. The court, therefore, will not consider whether this claim is exhausted at this time and dismisses Claim 19 without prejudice as premature.

## CONCLUSION

Based on the foregoing, the court grants in part and denies in part the State's Motion (#154) for Partial Summary Judgment on exhaustion/procedural default grounds, directs further briefing from the parties on exceptions to procedural default as described herein, and rules as follows:

1.      The court will address the following claims on the merits in due course:

      a.      1(A)(1);
      b.      1(A)(2)(f)-(g);
      c.      2(8)(c);
      d.      3(B)(3)(k);
      e.      4(A) (to the extent this claim is a facial challenge to Oregon's capital sentencing scheme);

---

[5]    The State also contends these claims are not ripe for review because petitioner may raise them at the time the death warrant hearing is held pursuant to Or. Rev. Stat. 137.463.

|       |                                                                                                   |
|-------|---------------------------------------------------------------------------------------------------|
| f.    | 6(A)(2);                                                                                          |
| g.    | 7(A)(2);                                                                                          |
| h.    | 7(A)(4);                                                                                          |
| i.    | 7(B);                                                                                             |
| j.    | 9;                                                                                               |
| k.    | 10(B) (to the extent this claim is a facial challenge to Oregon's capital sentencing scheme);    |
| l.    | 11(A) (to the extent this claim is a facial challenge to Oregon's capital sentencing scheme);    |
| m.    | 12(7); and                                                                                        |
| n.    | 15 (to the extent this claim is a facial challenge to Oregon's capital sentencing scheme);       |

To the extent the State's Motion for Partial Summary Judgment applies to these claims, the court DENIES the State's Motion.

2. The court will address the merits of claims 1(A)(2)(e) (to the extent petitioner alleged guilt phase counsel lacked experience litigating death penalty cases and were not qualified to represent petitioner in this case); 1(A)(3); 1(A)(4); 1(A)(5)(b), (d); 1(B) (to the extent petitioner alleged generally that the investigation was so inadequate as to be non-existent); 1(B)(2)(to the extent petitioner alleged generally that counsel made numerous claims in his opening statement that were not supported by the evidence); 1(C)(1); and 1(E)(1)(k) (to the extent petitioner alleged generally that counsel failed to effectively cross-examine prosecution witnesses) in due course.

3. The court will address the merits of claims 2(2)(c); 2(7) (to the extent petitioner alleged counsel failed to present available and compelling mitigation evidence and failed to discover petitioner suffered from mental illness); 2(8)(c); and 2(8)(f) in due course.

4. The court will address the merits of claims 3(B)(3)(c)-(d) (to the extent petitioner alleged that Hendershot and Kolego failed to present facts related to petitioner's upbringing and life in mitigation); 3(B)(3)(f) (to the extent petitioner alleged Hendershot and Kolego failed to present evidence of petitioner's bipolar disorder); 3(C) (to the extent petitioner alleged that Hendershot and Kolego failed to present facts related to petitioner's upbringing and life in mitigation); and 3(E)(2) (to the extent petitioner alleged Hendershot and Kolego failed to adequately cross-examine Dr. Cochran) in due course.

5. The court will address the merits of claim 13(4) (to the extent petitioner alleged the trial court violated the Fifth Amendment's double jeopardy clause when it admitted evidence of petitioner's fight with his cellmate) in due course.

6.    The court will address the merits of claims 16(1); 16(2); 16(3); 16(4); 16(5); and 16(6) (to the extent these claims are facial challenges to Oregon's capital sentencing scheme) in due course.

7.    The court directs petitioner to submit a brief within 60 days of the date of this Order supporting his contention that the court should excuse any procedural default identified in this Order because petitioner can satisfy one or both of the exceptions to procedural default; namely, the fundamental miscarriage of justice exception and/or the cause and prejudice exception. Petitioner is directed to specifically identify how these exceptions bear on individual claims. The State may file a responsive memorandum within 30 days of petitioner's submission.

8.    Claim 19 (prophylactic incompetency claim) is dismissed without prejudice as premature.

IT IS SO ORDERED.

DATED this 13th day of ~~August~~ Sept, 2010.


Robert E. Jones
United States District Judge

28 - OPINION AND ORDER